UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



SQUAREPOINT OPS LLC,

    Petitioner,

-against-

VOJISLAV SESUM,

    Respondent.

No. 19 Civ. 7317 (LAP)

OPINION & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Petitioner Squarepoint Ops LLC ("Squarepoint") moves to confirm a July 3, 2019, arbitration award (the "Award") against Respondent Vojislav Sesum ("Sesum"). (Petition to Confirm Arbitration Award ("Petition"), dated Aug. 6, 2019 [dkt. no. 1].) Sesum cross-moves to vacate the Award on grounds that it disregards applicable law and grants unspecific injunctive relief. (Cross-Petition to Vacate Arbitration Award ("Cross-Motion"), dated Sept. 13, 2019 [dkt. no. 15].) For the reasons stated below, Squarepoint's petition to confirm is GRANTED in part and DENIED in part, and Sesum's cross-petition to vacate is GRANTED in part and DENIED in part.

1

I.  Background[1]

The Award arises from a dispute regarding breaches of confidentiality and intellectual property agreements during Sesum's employment by Squarepoint. (See Petition ¶ 8.)

In 2015, Squarepoint hired Sesum as a "quant researcher," executed an Employment Agreement ("EA") with Sesum, and provided Sesum an Employment Handbook ("EH"). (Award at 1-2.) The EA contained a confidentiality provision prohibiting disclosure of Squarepoint's confidential information during and after Sesum's employment with Squarepoint. (See id. at 2-3.) The EA also contained an arbitration clause and restrictive covenant directing attention to provisions of Squarepoint's EH. (See id. at 3.) The EH defines confidential information as, among other things, "inventions, designs, computer code, techniques, database systems, formulas and ideas." (Id.) The EH waives an employee's right to any documents and software "which are created or developed, or are in the process of being created or developed" during employment. (Id. at 4.)

In April 2018, Squarepoint initiated an arbitration before the American Arbitration Association ("AAA") pursuant to the arbitration provision in Sesum's EA. (Petition ¶ 6.) Squarepoint took the position during arbitration that Sesum,

---

[1] These facts are taken from the Award and each party's submission.

2

while employed for Squarepoint, prepared a coded trading "strategy" that he intended to offer to a potential new employer, Millennium Management LLC ("Millennium"). (See Award at 5.) Squarepoint argued that Sesum's subsequent execution of this plan breached his EA, violated the Defend Trade Secrets Act, and breached his duty of loyalty as a faithful servant to Squarepoint. (Petition ¶ 8.) Sesum denied the allegations and asserted a counterclaim for breach of contract by Squarepoint. (Id. ¶ 10.) The arbitrator dismissed Sesum's counterclaim. (Id. ¶ 12.)

In July 2019, following hearings, witness testimony, and post-hearing briefing (id. ¶ 14), the sole arbitrator issued the Award in favor of Squarepoint. (See Cross-Petition ¶ 15.) In the Award, the arbitrator concluded that Sesum developed the strategy while employed at Squarepoint, such that the intellectual property regarding the strategy belonged to Squarepoint. (Award at 14.) The coding strategy itself was an "invention" belonging to Squarepoint pursuant to the EH. (Id.) Sesum provided the strategy to Millennium, which gained significant monetary profit from the strategy's use. (See Award at 27.) The arbitrator found that Sesum had no right to use or license the strategy without Squarepoint's consent. (Id.)

Sesum's employment contract with Millennium ("FMA") entitled him to ▮▮▮▮▮



(Memorandum in Support of Cross-Petition to Vacate ("Cross-Petition Memo"), Sept. 13, 2019 [dkt. no. 16] 6 (emphasis omitted).) Under the FMA, ▮▮▮▮



(Cross-Petition Memo at 6-7 (emphasis omitted).)

The arbitrator directed Sesum to, within 30 days, pay $188,136.87 to Squarepoint for damages arising from Sesum's breach of the duty of loyalty. (Id. at 30.) Sesum was also

directed to disgorge $919,052.78 to Squarepoint, representing all profits paid to Sesum by Millennium as a result of the strategy through February 2019. (Id. at 33-34.) An interest rate of 9% per annum was to be applied on these amounts starting 30 days after entry of the arbitral award on August 2, 2019. (Id. at 30, 33.) Sesum is required "to account for and disgorge to [Squarepoint] all profit he has been paid by Millennium, for its use of the [s]trategy." (Id. at 34.) He was directed to "continue to account to Squarepoint for all profits he receives and are made on the use of the [s]trategy." (Id.) Sesum was also directed to reimburse $5,075.00 to Squarepoint for one-half of the AAA's administrative fees and expenses related to the arbitration. (Id. at 38.)

The arbitrator also awarded, in relevant part, the following injunctive relief:

    a. Sesum is enjoined and directed to provide and return all originals and copies of the underlying code and any backtests to Squarepoint . . . .

    b. Sesum is enjoined and directed to inform Millennium that he did not own Pre-Employment Intellectual Property (as described in his Financial Manager Agreement with Millennium and in C.Exs. 27 and which is the subject of C.Ex. 127) and that he developed such during his employment with Squarepoint . . . .

    c. Sesum is enjoined and directed to immediately cease using and divulging the Strategy (whether directly or indirectly) and its underlying intellectual property and within 30 days to account for all profits he was paid on account of the use of the Strategy (which is the subject of C.Ex. 127) and to disgorge and pay to Squarepoint any

5

> profits Millennium paid to Sesum (as provided in his Financial Manager Agreement that is based upon the Strategy that he represented to Millennium was his Pre-Employment Intellectual Property) within 30 days hereof or within 30 days of the receipt of such profits by him and to certify by affidavit that he has complied with this paragraph; and
>
> d. Sesum is enjoined and directed to inform Millennium, as well as all other agents or principals, of this injunction and its text within 7 days hereof. Sesum shall certify by affidavit that he has done so.

(Id. at 36-37.) The Award contains a footnote, further elaborating on the scope of the injunction:

> The scope of the injunction applies to what Sesum cannot do directly or indirectly. The "intellectual property" referenced in the injunction is the trading Strategy that is described by Sesum in C.Ex. 27 and is described by Millennium's documents that are in evidence as C.Ex. 123-125, and C.Ex 127 (PnL Recap).

(Award at 36, n.20.)

On August 6, 2019, Squarepoint petitioned to confirm the Award. (See Petition.) Sesum cross-petitioned to vacate the Award on September 13, 2019, arguing that the Award disregards law and insufficiently details the injunctive relief its grants. (See Cross-Petition ¶ 1.) Sesum contends that the arbitrator erroneously calculated his profits pursuant to the FMA. (Cross-Petition at 6-8.) Additionally, Sesum contends that the injunctive relief granted is impermissively vague in violation of Federal Rule of Civil Procedure ("Rule") 65(d)(1). (Id. at 8-11.)

6

II. Legal Standard

Once an arbitration award is issued, Section 9 of the Federal Arbitration Act ("FAA") permits a party to request that a district court enter an order confirming the award. STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 74 (2d Cir. 2011) (quoting 9 U.S.C. § 9). Arbitral determinations must be given "great deference," placing a "heavy burden" on those seeking to vacate an arbitral award. Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003). Vacating an award requires "showing that [it] falls within a very narrow set of circumstances delineated by statute and case law." Id.

Section 10 of the FAA delineates four circumstances under which courts may vacate an arbitration award:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or either of them;

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).

In addition, an arbitral award can be vacated "when an arbitrator has exhibited a manifest disregard of law." KT Corp. v. ABS Holdings Ltd., 784 Fed. App'x 21, *24 (2d Cir. Sept. 12, 2019) (quoting Jock v. Sterling Jewelers Inc., 646 F.3d 113, 121 (2d Cir. 2011)). It is well established in the Second Circuit that "manifest disregard" is a measure of "last resort," limited only to "exceedingly rare" instances of an arbitrator's "egregious impropriety." Duferco, 333 F.3d at 389; see also Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Comm. Of Bayou Grp., 491 Fed. App'x 201, 204 (2d Cir. 2012) (noting that "[t]he manifest disregard standard is, by design, exceedingly difficult to satisfy").

Even a "serious error" in the law or facts is alone insufficient to warrant vacatur. KT Corp., 784 Fed. App'x at *24; see also Siegel v. Titan Indus. Corp., 779 F.2d 891, 892-93 (2d Cir. 1985); Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002) ("Given the deference afforded arbitration decisions, this standard requires more than a mistake of law or a clear error in fact finding."). If there "is [even] a barely colorable justification for the outcome reached," then the court must confirm the arbitral decision. Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004) (quoting Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 260 (2d Cir. 2003)) (emphasis in original).

8

An arbitration award confirmed by a district court "has the same force and effect as if it had been entered in an action in the court itself." Diapulse Corp. of Am. v. Carba, Ltd., 626 F.2d 1108, 1111 (2d Cir. 1980) (citing 9 U.S.C. § 13). If the award grants injunctive relief, it must comply with Rule 65(d). Id. Rule 65(d) dictates that the injunction must (1) "state the reasons why it issued;" (2) "state its terms specifically;" and (3) "describe in reasonable detail--and not by referring to the complaint or other document--the act or acts restrained or required." FED. R. CIV. P. 65(d)(1)(A)-(c).

"Rule 65(d) is satisfied 'only if the enjoined party can ascertain from the four corners of the order precisely what acts are forbidden or required.'" City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 144 (2d Cir. 2011) (quoting Petrello v. White, 533 F.3d 110, 114 (2d Cir. 2008)). It ensures "that the appellate court knows precisely what it is reviewing." Id. (quoting S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 241 (2d Cir. 2001) (internal quotations omitted)). The injunction cannot "withstand appellate scrutiny" if it does not comply with Rule 65(d). Id.

Ultimately, if an award is ambiguous, remand to the arbitrator for clarification is the appropriate remedy. Rich v. Spartis, 516 F.3d 75, 83 (2d Cir. 2008); see also Am. Ins. Co.

v. Seagull Compania Naviera, S.A., 774 F.2d 64, 67 (2d Cir. 1985).

III. Discussion

Sesum contends that the entire Award should be vacated on two grounds: (1) the arbitrator's interpretation of the FMA constitutes a manifest disregard of the law and (2) the provided injunctive relief is vague and indefinite in violation Rule 65(d)(1). (Cross-Petition Memo at 6, 8.) For the reasons discussed below, the Court finds that Sesum has failed to meet the extremely high standard for vacating the Award on manifest disregard grounds. However, Sesum has shown that the Award's injunctive relief is impermissibly vague and must be remanded to the arbitrator for clarification.

a. Whether the Arbitrator Manifestly Disregarded the Law

Because Sesum premises his claim of manifest disregard of the law entirely on the arbitrator's contractual interpretation and calculation of damages, no such manifest disregard of the law can be established.

i. The Arbitrator's Interpretation of the FMA

"Whether [an arbitrator] misconstrued a contract is not open to judicial review." Bernhardt v. Polygraphic Co. of Am., 350 U.S. 198, 203 n.4 (1956). Even where courts have "serious reservations" about an arbitrator's interpretation of a contract, they are still "required to confirm arbitration

awards." Singh v. Raymond James Fin. Servs., 633 Fed. App'x 548, 550 (2d Cir. 2015) (quoting Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 92 (2d Cir. 2008), rev'd & remanded on other grounds, 559 U.S. 662 (2010) (internal quotations omitted)). However, Sesum contends that judicial review is appropriate here because the arbitrator entirely failed to interpret the FMA. (Reply Memorandum in Support of Cross-Petition to Vacate ("Cross-Petition Reply Memo"), Oct. 15, 2019 [dkt. no. 28] at 5); see also Stolt-Nielsen, 548 F.3d at 94 (recognizing that a court may vacate where an arbitrator has "failed to interpret the contract at all" (quoting Wise v. Wachovia Sec., LLC, 450 F.3d 265, 269 (7th Cir. 2006)).

Sesum's assertion is misguided. The Award makes clear that the arbitrator relied upon, and did not ignore, the FMA when determining the appropriate damages. (Award at 33-34.) Under the FMA, ███████████████████████████████████████
███████████████████████████ (Cross-Petition Memo at 6-7.) The arbitrator determined Squarepoint's award by calculating 20% of Millennium's profits related to the strategy through February 2019. (Award at 33-34.) The arbitrator also tasked Sesum with calculating and disgorging to Squarepoint all profit he received after February 2019 resulting from the strategy. (Id. at 34.)

Sesum argues that, because ██████████████████████
████████████████████████████████████████████████████

11

█████, it was improper for the arbitrator to calculate damages by aggregating Millennium's profit across 2018 and 2019. (Cross-Petition Memo at 7.) ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ (Cross-Petition Reply Memo at 5.) Sesum mistakes his disagreement with the arbitrator's process as a "fail[ure] to interpret the [FMA] at all." See Stolt-Nielsen, 548 F.3d at 95 (internal citation and quotations omitted).

The arbitrator's reliance on the FMA's provisions proves Sesum wrong. (Award at 33-34.) It cannot be said that the arbitrator's decision to rely on 20% of Millennium's profits, rather than calculating what Sesum had actually been paid, constitutes a total disregard of the FMA. Weiss v. Sallie Mae, Inc., 939 F.3d 105, 109 (2d Cir. 2019) ("We will uphold an arbitration award . . . so long as the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract." (internal citation and quotations omitted)); I/S Stavborg v. National Metal Converters, Inc., 500 F.2d 424, 432 (2d Cir. 1974) (confirming award despite its reliance on a "clearly erroneous" interpretation of a contract).

The arbitrator's calculation is explicitly derived from the terms Sesum agreed to in the FMA. (Award at 33-34.) Any

12

disagreement about whether Sesum's actual pay related to profit or not is a question of fact that, even if clearly erroneous, cannot alone warrant vacatur. See Goldman, 306 F.3d at 1216. Even if the Court agreed that the arbitrator's reading of the contract was incorrect, absent allegations of dishonesty, "the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001). Accordingly, Sesum has not carried his burden with respect to the arbitrator's interpretation of the FMA.

  ii. The Arbitrator's Calculation of Damages

Sesum's dispute of the Award's validity ultimately turns on his assertion that the arbitrator improperly calculated Squarepoint's damages. (Cross-Petition Memo at 7-8.) However, a miscalculation of damages does not warrant amendment or vacatur of an arbitration award. See Josephthal & Co. v. Cruttenden Roth, Inc., 177 F. Supp. 2d 232, 237 (S.D.N.Y. 2001); Clarendon Nat'l Ins. Co. v. TIG Reinsurance Co., 990 F. Supp. 304, 310 (S.D.N.Y. 1998). Ultimately, "[t]he manner of computing damages is for the arbitrator and not for the courts." Orion Shipping & Trading Co. v. Eastern States Petroleum Corp., 312 F.2d 299, 300 (2d Cir. 1963). Again, any miscalculation of damages by the arbitrator resulting from a misunderstanding about how much profit Sesum may have actually received is fact-

based and does not permit the Court to vacate the arbitrator's Award. See Idea Nuova, Inc. v. GM Licensing Grp., Inc., 2009 U.S. Dist. LEXIS 73390, at *16 ("[A]n arbitrator's calculation of a reasonable award necessarily involves findings of fact, 'which federal courts may not review even for manifest disregard.'" (quoting Stolt-Nielsen, 548 F.3d at 98)).

Accordingly, the Court cannot vacate the Award because there has been no showing that the arbitrator exhibited a manifest disregard for the law.

b. Whether the Injunctive Relief was Unlawfully Vague

Sesum avers that the Award's injunctive relief does not sufficiently define "Strategy" and its "underlying intellectual property," instead just referring to certain unattached exhibits that purportedly explain these terms. (Cross-Petition Memo at 9.) He is correct that this is insufficient as a matter of form to satisfy the requirements of Rule 65(d)(1)(C), which requires description of the conduct barred or demanded in reasonable detail and "not by referring to the complaint or other document[s]." FED. R. CIV. P. 65(d)(1)(C). Because the injunction fails to comply with Rule 65, the Court is unable to ascertain from the four corners of the Award what specifically Sesum must do to satisfy the terms of the injunction. The Court of Appeals has made clear that injunctive relief deficient of Rule 65's requirements will not survive appellate review.

14

Micalis Pawn Shop, LLC, 645 F.3d at 144 (finding that injunction that prohibited conduct by referring to an amended complaint violated the requirements of Rule 65(d)); see also Corning Inc. v. PicVue Elecs., Ltd., 365 F.3d 156, 158 (2d Cir. 2004).

However, Sesum has no basis to assert that the injunctive relief in its entirety should be vacated. The correct remedy is remand to the arbitrator for clarification. Spartis, 516 F.3d at 83. Here, the solution is as simple as having the arbitrator attach the presently described but unattached documents to the Award. Squarepoint correctly identifies that the attached documents can be filed under seal to quell any concerns of confidentiality. (Memorandum in Support of Petition to Confirm ("Petition Memo"), Sept. 30, 2019 [dkt. no. 23] 12 n.19). Accordingly, the Award is remanded to the arbitrator for clarification only as to the injunctive relief provided.

IV. Conclusion

For the foregoing reasons, Squarepoint's petition to confirm the arbitration award is GRANTED in part and DENIED in part [dkt. no. 1], and Sesum's cross-petition to vacate the award is GRANTED in part and DENIED in part [dkt. no. 15].

The Award is hereby remanded to the arbitrator for clarification. The arbitrator shall clarify the injunctive relief provided for on pages 36-37 of the Award. (Award at 36-37.) The arbitrator may do so either by attaching the

15

referenced exhibits or by explaining the substance of those exhibits in the Award itself. The parties are directed to provide the arbitrator promptly with copies of this Order and the underlying motion papers.

Because of the presence of confidential business information, this order has been redacted, and the full order shall be filed under seal.

SO ORDERED.

Dated:    New York, New York
           March 2, 2020

*Loretta A. Preska*
LORETTA A. PRESKA
Senior United States District Judge